All right, Illinois County Court sets the division. Now for session, I'll have Justice Daniels here to present. Good morning, please be seated. Madam Clerk, would you call the first case, please? Court is in session. 3190, Carlos McCary v. IL Farmers Insurance. Will the attorneys who are going to argue the case please approach the bench, identify yourselves, and indicate how much time you would like for your argument. Good morning, Justices. My name is Leo Riggins. I represent Carlos McGary. I would like approximately three or four minutes to advance my argument. That's a record. Good morning, my name is Karen Schulman and I represent the witness, Solomon Morgan, and I would like to take the remainder of the introductory time. Very well. Good morning, Your Honor. My name is Zach Chacon. I represent Illinois Farmers Insurance Company and I believe that my argument will take roughly ten minutes. Very well. We try to give everybody as much time as they need, as long as they don't go too far afield, so we appreciate your estimates of time. Thank you, Your Honor. Thank you. Ms. Schulman, or who wants to start? Mr. Wiggins? Yes, Your Honor. Good morning. Good morning. Justices, opposing counsel, co-counsel, may it please the court. This appeal is brought, per se, to a contempt citation and the denial of an insurance claim that involved an automobile that was involved in a two-car collision. The daily accident was June 29th of 2010. There was a denial of the claim in December of 2010 by the defendant insurer. The investigation that was done by farmers yielded a denial and it was based on an investigation that was done by an investigator, Salinski. There were statements taken from everyone that We've read the briefs on the record. Because you have so little time, why don't you just focus on what your main complaint is. The mend the hold doctrine is applicable here because it would be unfair for the plaintiff to have to respond to any new defenses that would be asserted at this time. That stops them once the mend the hold is used. Pardon? Once the mend the hold is used, it's stopped. Right. We don't have the transcripts of any of the hearings before the court. There's no record. There's no record of the hearings before Judge Burke. Well, you have the orders. That's all we have is the orders. There probably wasn't a court report, correct? There was not a court report at present. No, and there's no bystander report. And there has never been any mention of any other defense such as insurable interest that you read from the response brief. That's the first time that's ever been raised. But the judge in her orders doesn't say anything about mend the hold. Well, mend the hold was part of the pleadings on which her orders were based. No, no, but her orders itself. I mean, we don't know what her position was on your argument of mend the hold. Her position was found in her denial of our motion for summary determination of a major issue. When was that raised, I guess? We're trying to figure out. That was raised, and that's appended. The motion for summary judgment was done in October, almost contemporaneously with the time that the contempt citations were issued. And who moved for summary judgment? The plaintiff did. As to not the whole case, but as to a major issue. And that was where the mend the hold doctrine was raised. The judge entered an order denying the motion without prejudice. That was a separate proceeding to the sanctions? It was part and parcel of it. It was actually separate because there was a contempt citation that was brought, a rule of show cause that was brought. And on the rule of show cause, the plaintiff in the witness position was that mend the hold applied or not? Was that mend the hold applied? And you brought that up before the judge in connection with the sanctions. But there's nothing in the order that gives us any information on that. We don't know. Right. We didn't draft the order. The only order we drafted was the denial without prejudice of the summary judgment motion on a particular subject, on a major issue. So I hate to interrupt you, but it's real important that we understand. So when they filed the rule to show cause, correct? Right. Because Mr. Morgan refused to testify. You, on behalf of your client and Mr. Morgan, responded by saying the mend the hold doctrine applies, essentially applies, and the insurance company shouldn't be allowed to ask Mr. Morgan about something other than whether the insured plaintiff cooperated with the insurance company. That's basically it. And then the judge found, didn't issue a rule, didn't respond to the rule of show cause. She simply found Mr. Morgan in contempt and Ms. Shulman in contempt. Correct. Generating two separate orders, the contempt order and your denial of your summary judgment on mend the hold without prejudice. Yes. What was the basis? I mean, there's no, the order on the denial of motion of summary judgment does not give us the basis for her ruling. Right? It just denies it without prejudice. She just denies it without prejudice. Okay. So we don't have any idea why. We have to rely on the pleadings. We have to rely on the pleadings of the parties in that regard and on the court's order because it was not a transcript. And that would be an interlocutory order, do you think? It would be interlocutory except that there's no way to determine the fairness of the contempt order without taking a look at the basis on which it was entered. Additionally, this is a de novo appeal. And there was motion practice that this court entertained and denied a motion that was aimed to strike or attack our appeal as to it being a de novo versus a manifest abusive discretion standard. I just want to point out a couple of things with the remaining time that I have. That trial by ambush would be encouraged if farmers was allowed to at this time try on a new defense. The question of an insurable interest was addressed in the written court where less than a title is necessary. The claimant, McGarry, produced a bill of sale and all of the information that has been gleaned through discovery is nothing but a rehash of what was gleaned six weeks after the claim was made by the investigator and also in the sworn statement that the plaintiff walked out of after being asked repeatedly about his criminal history and making the assertion that his sugar was low and that he needed to leave and have something to eat. There has never even been a disclosure of Solomon Morgan who was also, there was a statement taken from him, there is a Tamika Sampson that was involved. All of these people had already provided statements. Farmers could have and should have asserted as a denial basis an insurable interest and then we would be at issue. We would know what we have to defend against. But isn't it typical in these cases that discovery proceeds before that amend to hold takes effect? This is a case of first impression. I'll agree with you, Justice, on that. But I believe that it applies especially in this particular scenario where an insurer for six years and after 15 months of motion practice, serial motions to compel an answer, it took us that long to get at issue. There has never been an affirmative defense raised. The only issue that's been framed by the denial letter and the pleadings has to do with his failure to cooperate which is rooted in his failure to complete a sworn statement or examination under oath. So your position is, wait a minute, we're only talking about the examination, which was reason given. These questions have nothing to do with that examination. They won't in any way. They have nothing to do with the examination and that's the only framed issue. Therefore, it's irrelevant. Those issues are irrelevant. So that's why in the fact that they have not yet asserted it, we are aiming to stop them from asserting anything based on the fact that they have never answered the complaint. They've answered, but they haven't asserted an affirmative defense. And that could have easily been done. And it also could have been recited so that this claimant and any attorney that would represent him would have notice of what it was that they were up against. The only thing that we've ever known that we were up against in writing is that. Was the subject at all the 2005 Bentley? Yes. The subject of the claim is a 2005 Bentley that was involved in a rear-end collision. A police report was made. All of this has been known to this insurer for a very long time, and yet they have neglected to ever raise these issues. And they've never even named these purported witnesses that they may rely on. Solomon Morgan, Investigator Sawinski, were never included in their interrogatory answers. So we have no notice of any of this other than some questions that appear to me to be a fishing expedition on these depositions. And that's what we were aiming to get away from. Am I thinking about this the way you're thinking about this? I'm not saying you're right, but is this what you're saying? That up until the time that this contempt issue happened, up until that time the insurance company had sufficient knowledge on a potential question or claim about ownership of the car that they could have asserted that and should have asserted it prior to the contempt proceedings. That's absolutely my reasoning. Okay. And that the fact that they didn't and allowing them to now question Mr. Morgan about ownership issues is changing their contractual position that they pled. And therefore they should never be allowed to do that and to allow discovery to go forward on the ownership issue will all be a waste of time, money, and effort because it's not legally allowable. Is that it? That's basically it. Okay. Are there any rules of civil procedure that you say apply? I have 2616D in regards to an answer and anything that would surprise a party. And keep in mind that even though pending this appeal the trial order, the order-setting trial was vacated, up until that time we had about a five or six-month later trial date. So it's absolutely a surprise for us at this juncture or at that juncture to have to deal with things that were never been told to us or we've never been put a notice on in the way of pleadings or discovery. And I'm going to have to stop because... Well, I was just going to say you used your lawyer's spiel for a minute. Thank you, Mr. Winston. We'll give you plenty of time, counsel. All right. Ms. Schulman. Justices. Co-counsel and opposing counsel and guests. I'm here to address the issue primarily initially of the contempt citations. The purported contempt orders that were entered in this case should be vacated. The Supreme Court rules are mandatory. They are the law. They are not suggestions and neither are they aspirational. And issuance of a contempt order is the proper procedure pursuant to the Supreme Court in order to test discovery orders that are not valid or questionable or need additional interpretation. In this particular case, Mr. Morgan, who was a witness, a non-party witness to this case, and his refusal to answer questions that were related to a vehicle that is not part of the underlying cause in this particular case, was in a good-faith effort to secure an interpretation of a well-settled doctrine. And opposing counsel has repeatedly referred to this as something that's antiquated or technical than the whole situation, which it is not. It's well-settled and it's been a part of Illinois law for over 110 years. A few dates that Mr. Wiggins was pointed out to you that I think are really important to remember, that the accident or the occurrence in this case happened in June 2010. Farmers Insurance Company employed a special, they have a special investigations unit, so I assume that they have multiple resources at their disposal. And there was an investigation, and that investigation resulted in a report that was concluded in September of 2010. Just months, six weeks I think Mr. Wiggins mentioned, after the data loss. There was a denial letter and a lawsuit was filed about seven or eight months later in May of the following year. The very first time that there was any notice or any mention of Mr. Solomon Wiggins' potential involvement in this case was the first deposition that he appeared at in July of 2014. Four years after the date of the occurrence. So why is that relevant? Why is it relevant? Well, we told them because our farmers had never mentioned him as a potential witness or listed them. Interrogatories were provided? Yes, almost definitely. It took 14 months for them to answer. You had answers, and apparently they listed him? No, they did not. They never listed Mr. Morgan, and they never listed Mr. Stilinski, who was the investigator for the special investigations unit. Do they have to in order to take somebody's deposition? Well, no, not in order to take somebody's deposition. They have an obligation to supplement their answers to interrogatories. But that is an issue. There were specific questions regarding who he has knowledge of his circumstances. Are you here on that issue? No, not necessarily. It's part of the issue because after that initial deposition, and our farmers were persistent in questioning Mr. Morgan regarding not only his personal papers and his business practices, but they focused and actually had a rider regarding a vehicle that was not the Bentley, the Mercedes. A Mercedes that apparently was a vehicle that was either owned or traded in or used in some way, in order to obtain the Bentley. But it was not the insured vehicle, nor was it even a vehicle involved in the occurrence. So your contention is that if there is an arguable issue about ownership of the Bentley, your client was only involved with ownership of a Mercedes that was not the insurable interest. Well, Mr. McGarry was given the Mercedes. Yes, I believe that is what the allegation was, that the Mercedes went to Mr. McGarry, and Mr. McGarry used the Mercedes as part of the trade-in and part of the value in order to obtain the Bentley. So why can't they ask questions of Mr. Morgan about the trade-in? I mean, he's involved with the Bentley. Only tangentially. Well, it doesn't matter tangentially or not. Well, we don't really know that. Oh, he didn't say that? No, those are the questions. Oh, he didn't say he traded in the Bentley? Mr. Morgan never said that. Mr. McGarry did. If I might just focus a little bit. You asked about what rules were applicable. The rules are not inspirational, and they apply not only to the parties, but they also apply to the court. And in this particular case, the orders that were drafted that are the purported contempt orders were all drafted by farmers, by Mr. Chacon. The very first order that concerns this contempt issue was entered on August 11th. On August 11th, I just want to clarify that the pleadings that we're talking about that were in question was a combined response to farmers' initial motion to compel and summary determination on a major issue, which was to amend the hold. It was all combined into one pleading. It was filed at the end of July, and it was heard August 11th of 2014. So it was prior to the sanctions. The first order, instead, I was quite clear, polite, and according to the Supreme Court rules, and in writing, because it was in our wherefore in that combined motion, requested that the court hold me in affirming contempt in order to test the discovery order, in order to test to see whether or not it was appropriate for him to have to answer questions regarding the Mercedes, which was perfectly according to the rules. But instead, farmers wrote the order just saying that the motion to compel was granted and that Mr. Morgan was, excuse me, Mr. Morgan was to be debt in 30 days. That's all it said. Debt, D-E-P-P-E-J. So the court did not say anything about being friendly. The court said nothing about it. That's what we had before us. That's right. So I produced Mr. Morgan again, and by agreement, the next deposition was held on October 1st. We know the facts. What's your argument? So my argument is that pursuant to 219A, that the order was bereft of any code of rules or reason why the motion to compel was granted, and therefore the order was defective. There was no mention of any certified questions. Nor were any questions brought forth to the trial court for her to certify or determine. And there's nothing in the order that talks about what was being sanctioned or what the topic even of the second deposition was supposed to be about. I think there are a long list of cases that have said you don't have to do that, even though the rule says one thing. Of course, they've interpreted that you can look at the reasons for the contempt from the record, and that would be from the pleadings and on the motion. We don't have a transcript, but we have the pleadings. I understand that. Why shouldn't we follow that? Well, and for a couple of reasons. Number one, we need to take a detailed look at Rule 219. 219A, if the sanctions are imposed under 219A, if you read that, when we're talking about a witness, an unpartied witness, the rule is written in the disjunctive. It says or, or, or either. It doesn't say and. And the order is written and, so both Mr. Morgan and Karen Shulman. So that doesn't follow what the rules require. The order you're talking about is the order compelling you to attend the deposition. Well, we did attend the deposition. Right, so this is the order after. This is the order on October 6th. This is the order that found you in contempt. Correct. And that order finding you in contempt is in response to a motion for the issuance of a rule to show cause. That is correct. And you did not even get an opportunity, you contend, to respond to why you shouldn't be held in contempt. That is correct. I have prepared a written motion. Okay, I just want to get the sequence. That is absolutely correct. Okay, so keep going. And I did not have an opportunity. The order that was entered on October the 6th, which is the actual order that we're kind of talking about here, besides requiring the court to either issue a separate order or with some specificity for the contempt citation, and the rules are mandatory in the court as well, it fails to show the nature of the contemptuous conduct. It doesn't say anything about that. It just says contempt, and that's it, based on their motion for rule to show cause, which I say is not exactly what is envisioned by Rule 219c. And it also says the judge, and it specifically says the judge, and it uses the word shall, so we all know what that means, with specificity or in a separate written order. Well, none of that happened. And that happened on October the 6th. On October the 17th, just one week later, I filed a notice of appeal based on the fact that, oh, you're going to hold me in contempt, 304b.5 permits me to file an immediate appeal, which is what I did, and that appeal was accepted. Then on October the 21st, after the notice of appeal was filed, there was an additional hearing, and there was a modification of the original order, even though later on October 6th, it didn't say anything about a reasonable fine to secure the 304b.5 issue, reasonable. Instead, again, an order drafted by Farmers, we had some discussion before the judge wrote it, the judge left the bench, and it was taken to the bank, and she signed it and filled in $100 per day. Well, $100 per day, is that against Mr. Morgan? Is that against me? Is that against us together? And the order was completely absent of any method by which we could purge ourselves of this should that happen. But by virtue of the fact that it was a modification of the contempt order, despite the fact that a notice of appeal had already been filed, I was compelled at that point in time to then file an amended notice of appeal, which I did within the 30-day period which is allowed by the appellate rules, to include that order of October the 21st. So that's kind of the whole ball of what's going on with the contempt orders. Now, as far as this kind of being a first impression, and I can understand that, I think I alluded to that, we alluded to that in our briefs, that applying this kind of a memo, I was unable to do despite my extensive research on this, found in a case that was really specifically on point. But I think it was a good faith effort in order to try to get some reasonable interpretation of just exactly at what point in time does that doctrine, well-settled Illinois doctrine, apply. I think that the case law is really clear on that, in that not only does it say that we're talking about five years now, after the data loss, it certainly was up to farmers at some point in time to make a motion to leave to amend their answer, leave to seasonally supplement their interest in the water choice. Can't they do it after discovery? Pardon me? Can't they do it after discovery? Isn't that usually what people do? They can do it any time. They can do it any time. They can do it after discovery. That very well may be the case. However, if they're going to amend, pursuant to 2-613-D, if they're going to amend, and that's the conception that sets forth when amendments are appropriate, it has to be set forth either an answer or a reply. And their answer took them 14 months to get a conforming answer on file. But nevertheless, at any time, they can ask the court for leave to do that. But they never did it. Well, they didn't do it yet because discovery isn't over. This is true. And Mr. Ticone was particularly disturbed by the fact that I didn't let him know ahead of time at the second deposition that I was going to continue. Well, you know, they very well could have pled any of these factors on information and belief. That is permitted by the rules. And then taking their time in discovery to really sort of, you know, find out exactly what they could have used. However, the case law in the Holland is really clear. You can't just wait all this time, and then if the first offense doesn't fit, then look for another one. The court says that's not what. And also, there's case law that says quite clearly, I have that, but I believe it was fully set forth in our brief. It also says that this doctrine does clearly apply in an insurance context. There's a considerable amount of case law that says it would apply. And if we were to not apply it in this particular case, it would allow insurers to just wait, sit back and wait, and buy their time, and then at the last minute attempt to amend either on the eve of trial or even after final judgment is entered and say, oh, we've got a whole new reason that we want to deny. All right. I'm going to reluctantly ask you to touch on some other issues you think are important because we've expired our time. Okay? Yes, Your Honor. Do you have anything else you'd like to? Oh, no. Unless you have some specific questions. Thank you. We'll give you a couple seconds for rebuttal. Thank you for your patience. Mr. Chicano. We'll give you ample time. May it please the Court. My name is Zach Chicano. I represent Illinois Farmers Insurance Company. I think Justice Hyman zeroed in on the central question here, and that is were the questions asked at Mr. Morgan's deposition relevant to the subject matter of this litigation? And the further question that the Court has got to address is did Judge Burke abuse her discretion in making a determination that that information was relevant? As Justice Hyman pointed out, the Mercedes, Mr. McGarry, the plaintiff in the case, has claimed that he acquired the Bentley by trading in a Mercedes that was given to him by Solomon Morgan. There's also the additional fact that Mr. Morgan is identified on the police report as being the owner of this vehicle. Which report? I'm sorry, being the owner of the actual vehicle in question, the Bentley. The police report itself identifies it. Which police report? They said they didn't get a police report on the Bentley's accident. Excuse me, Your Honor, I didn't catch that. My understanding of the record is they didn't get a police report as a result of that accident. No, actually they did. There was a police report made. According to Mr. McGarry, after the accident occurred, he drove the Bentley to a friend's house, and that friend then took him to the police report where he made his police report. There was a formal police report issued, and that police report reflected that not Carlos McGarry, but Solomon Morgan was actually the owner of the Bentley. Mr. McGarry testified at his examination in growth before litigation began that he, in fact, told the police that Mr. Morgan was the owner of the Bentley. So as I believe our principal argument is, is that the information that we've asked from Mr. Morgan concerning the Mercedes, and not just the Mercedes, but also concerning his relationship to the Bentley, which he was directed not to answer by Ms. Shulman, is directly relevant. And even if it is, even if there is some question in the Justice's mind as to whether or not that's relevant, it is up to the trial court to determine the scope of discovery, including the relevance of that information. Well, let's look at the scope of discovery. Because their argument is that the Mend the Hold doctrine applies now, and if that's accurate, then it would be irrelevant to ask these questions, since they have nothing to do with the reason previously given by farmers to McGarry that he wasn't cooperating. I understand that that's what their argument is, Your Honor. And we believe that the Mend the Hold doctrine has absolutely no prevalence to this litigation. And there's many, many reasons why it doesn't. We've handed them under our brief. But the first reason, and the reason that we think actually goes to the jurisdiction of this Court, deals with the fact that farmers has not yet attempted to mend the hold. There has been no attempt by farmers to assert any new defense in this action. And farmers does not believe that it has any obligation to assert any kind of defense that might be based on Mr. McGarry's interest in the vehicle. Mr. McGarry has got the burden in this case as the plaintiff in a breach of contract action to establish that he had an ownership interest in this vehicle, the extent of that interest, and his damages. And the method by which he acquired the Bentley is pertinent to all three of those issues. Is the defense on file that he failed to cooperate and that's why you're not paying the claim? It's a 155 action. I do not believe that there is an affirmative defense that specifically asserts the cooperation clause. What's the answer to the complaint? The answer to the complaint, with regard to the issues that are pertinent to the Court. No, he filed a complaint saying that farmers is exercising bad faith and not honoring my claim, right? That's one count, correct. What's the answer filed by farmers say? We deny that that's the case. We have not asserted a specific affirmative defense. Do you state any reason why that's not the case? It's a general denial. It's a general denial, I believe. I agree it's a general denial. Go ahead. There are two allegations that are in the complaint, though, that we do believe that are pertinent here. And they are pertinent not only because they reflect Mr. McGarry's understanding of his burden, but because of the way that farmers responded to those allegations. The first allegation that Mr. McGarry makes is that he was the owner of the vehicle, and he alleges when he actually purchased it. Farmers' response, which is appropriately certified pursuant to the rules, is that they have no information sufficient with which to answer that question. The second allegation is the date that the accident occurred, which has now become a subject of some controversy after the recorded statement of Tamika Sampson. He alleges that the accident occurred on June 29, 2010. Farmers' likewise response to that allegation were the lack of knowledge response, appropriately certified pursuant to the rules. Plaintiff and contemporaries have made a substantial argument that somehow the questions that were posed to Mr. Morgan in his deposition came as a surprise to them. They've always had the burden, as reflected by their complaint and as reflected by Illinois law, of establishing that Mr. McGarry owned the vehicle. But Mr. Morgan is not a party. Mr. Morgan is not a party. However, Mr. Morgan is the individual that allegedly gave Mr. McGarry the Mercedes. But he's not a party. So what burden does he have here other than responding to a subpoena? That's his burden. His burden is to respond to the subpoena and also to comply with the court's orders. The court ordered him to answer the questions after determining on motions that the scope of discovery that we were seeking was appropriate. Did the court order say answer these questions or did it say attend a second deposition? The order itself does not specify the questions that he should ask. However, the motion practice. But the order only said attend the deposition. That's correct. It didn't say depose. Oh, right. So he attended. I'm only making a comment that evidently Ms. Sherman believes that it says dept. It's my handwriting. It's very poor. It says deposed. We understand. I mean, we're not going to label you under triviality. I understand, too. So he was only ordered to attend a dept. Correct. Or deps. Correct. Or deposition. But this was in the context of the motion which laid out the questions. But he was not ordered to answer question 1, 2, 3, 4, 5, 6 specifically. In the order, no. However, the motion that led to the order identified the questions that he had not asked. And it was argued pursuant to that motion that he should be answering those questions. I don't know why the court would enter an order requirement to reappear for a deposition in the abstract. So that we're not here arguing abstract propositions. That's why courts are supposed to do it, I think. But I could be wrong. No, I understand what the concern is there. Okay. So now we get the order for him to attend a dept. He attends the deposition. It doesn't go well by all accounts, right? Again, it doesn't answer the question. It prompts you to file a rule to show cause. Correct. Correct? Correct. And did Mr. Morgan get an opportunity to respond to the rule to show cause? If you're asking me what's reflected in the record, there's nothing reflected in the record that indicates that he responded. I was there at the hearing, however, and there was not even a request made to file a response. That is not of record. Okay. And then the court held him and his lawyer in contempt. That's correct. It's interesting, too, the point that you're reaching for there, Your Honor. Do you know what I'm reaching for? Well, I'm going to try and read and interpret your questions. Ms. Shulman suggests that she was somehow deprived of due process rights by being not permitted to respond to the petition for rule to show cause. First of all, as I just stated, as far as I can recall, there was no request for a response. That position is also arguably inconsistent with her current position that she was actively seeking contempt. It's difficult for me to square the notion that she needed to respond to a petition for rule to show cause, seeking the very relief that she claims that she was actively seeking of finding a friendly contempt. Was that because of the mend the hold? Well, mend the hold does come into it, Your Honor. And keep in mind that mend the hold was already raised. It was raised in response to Farmer's motion to compel. It went Farmer's motion to compel, deposition second time, and then petition for rule to show cause. She did respond to the motion to compel. She responded as well as Plaintiff McGarry. Plaintiff McGarry filed a motion for summary determination raising the issue of mend the hold. Again, getting back to mend the hold, we don't think it applies because, in fact, we haven't sought to mend the hold. At this point, we are in discovery. And under, as I believe the Court has already pointed out, under the rules, we're permitted to amend even following final judgment to conform our pleadings to the facts. There's no obligation on our part to assert an affirmative defense of insurable interest or to assert some sort of affirmative defense that he doesn't own it. If you're correct and you're entitled to amend, that would presumably entitle the plaintiff to strike your amendment. At that point, once we were attempting to amend, I can understand why mend the hold would apply. Right. But I don't think it is. It applies. I mean, to some degree, it would be relevant. We don't know why the judge struck the motion. Assuming that mend the hold, assuming that they can meet the elements of mend the hold, that would be the appropriate point at which they should raise the issue. Our position, however, is that on the current state of the facts, there is no defense that we would have to assert in order to make the discovery that we seek relevant because the issues that are in the case already justify the discovery that we seek. What's unique is, I believe, tell me if I'm right, is they're using mend the hold offensively when it's a defensive move that gets a response as to whether it's a surprise, et cetera, et cetera. That's correct. The reason that there isn't a lot of cases on it is because there's nothing to mend because we haven't tried to mend yet. Therefore, their attempt to make it offensive has no basis in the Illinois law. It's an interesting sort of offensive shield. They're attempting to shield themselves from the discovery by raising the prospect of us down the road asserting a new defense. Our response to that is that, like I said, we don't believe that this actually is a new defense. We don't believe it's a defense at all. It's a bare burden. We are attempting to conduct discovery on issues on which they have the burden of proof. What about the issue of 219C? The orders, as counsel indicated, do not provide for reasons for the sanctions. Well, we found one case, and I believe we've cited it in our brief, that indicates that that's not really a fatal error that the court, if it wishes, can return the order to the trial court for clarification. I don't think that there's any question here, however, that purging would have been accomplished had Mr. Morgan come forward and answered the question. Doesn't purging have to be an opportunity, at least a purge? Otherwise, this could go on forever. Even if they said it, the saying would never stop. I guess my question would be, we are before the court on that order. We really don't have a stake in whether or not the fine that Judge Burke herself wrote into the order is something that should be upheld. We don't have really a stake in whether or not the contempt order should proceed and not be reversed. I will observe, however, that, and I think it's reflected in the record, we did address this question when plaintiffs attempted to remove Judge Burke for cause, that she was unhappy with the arguments that were being presented in support of the lack, in the claimed lack of relevance, and that she entered the order that she entered because of what she perceived to be the plaintiff and the contemptible's intransigence. Again, though, it's not really up to us to decide whether or not her order was proper. We did draft the order. She signed it. If it's not a proper order, we're still here before the court on the principal issue, and that is, will she correct in determining that the scope of discovery that we were seeking was right? That's the guts of it. That's the guts of it. Would it be fair to say, in light of all of this, that what the attorney on behalf of the client and what the plaintiff were trying to effectuate was a ruling based on whether Mendehall applied at that point? So it was a legitimate, good-faith attempt to resolve whether this legal issue applied or not, whether you agreed with it or not. In terms of the first issue, in terms of the first portion of that question, yes. I do believe that they were attempting to have the court rule at that point that we were barred from raising energy defenses by Mendehall. That is not before the court. But what is before the court is, just to be perfectly clear and fair to everyone, that this was a friendly contempt. Contempt is a very serious finding against an attorney. I understand. And I have trouble, I'm hesitating because I have some trouble with that notion. The order on the motion to compel, they refused to answer at the first sitting, or Mr. Morgan refused to answer at the first sitting. I know, but I'm trying to get, if I can just approach your question. We filed our motion to compel. In their response, they raise in writing a request for friendly contempt. At that point, there's been no order compelling. There's nothing that they could be in contempt for because there's been no order compelling anything. Judge then orders that Mr. Morgan reappear for his deposition. And at that point, they agreed to produce him. And they did? Now, that's inconsistent with the motion. They did produce him. They did produce him. And then thereafter, they were found in contempt. Thereafter, they were found in contempt for his failure to answer the questions. To answer. But he was only ordered to produce. Well, I guess I will have to stand on what I believe to be the law, that the Court has permitted to go beyond the order and look at the motion practice that led to that order. The motion practice that led to that order specified the actual questions that he was supposed to answer. So I don't know if I'm misinterpreting your question. Well, you know, it seems to me that he's ordered to attend. He attended. He wasn't ordered to answer a certain question. He wasn't ordered to answer all the questions. So when he attends the deposition, would he have been allowed to assert the Fifth Amendment privilege and thereafter be held in contempt? Because he didn't answer questions, he was only asked to go order to attend? I think that he probably could have asserted the Fifth Amendment. I guess that would depend on the legitimacy of that assertion. But he would have been permitted to do that. But what the Court seems to be suggesting is that the very basis upon which the Court has jurisdiction is somehow void because the order is improper. I think that that's – Well, if you were ever threatened with contempt, you would certainly say as an able lawyer, I did what I was told to do or ordered to do, attend the deposition. You would certainly come before us and say, you didn't order me to answer this question or that question. You said attend. Here I am. Again, Your Honor, that really seems to be questioning the very basis upon which the Court is exercising jurisdiction in this case. That's why we require specificity in what the order is. But my point, though, is that if the Court is correct and the finding of contempt was improper in some respect, then the Court doesn't really have jurisdiction to address the central issue in the case, and that's the relevance. We are before the Court essentially, by that reasoning, on known jurisdiction. We can't really – if the order of contempt is invalid, then it should be sent back to the trial court without a ruling by the Court on the principal issues. You'd start all over again. I would hate for that to happen. I know you don't want to, but I mean – That's what the Court believes. I do not believe that the law supports that. I believe that the order did, because it was based on a motion about which the parties were fully aware, order him to answer the questions that were identified in the motion to compel it. So that would turn on whether 219C, which says that the reasons have to be in writing. We don't have the reasons in writing. So either some courts say we're not going to enforce those words as the rule is in writing, and other courts disagree. So really now, that's the question, and then we go backwards. Correct. And if the Court's ruling is that we're here before you on an invalid contempt order, then everything else – False. False. Okay. And we are back in front of the trial court basically laying the foundation again for an entirely new appeal. We could see you again. And we would see us again. And we would welcome you. Counsel, it's been terrific. Justice Simon, he has a question, and we will give you some wrap-up time. Sure. Justice? Since its inception, has Farmers made any attempt to make any unilateral changes to the policy enforced? To the policy? Enforced. No. No attempts have been made to the policy enforced. Let me just gather my thoughts here for just a moment. There was one other point, mend the hold, that I did want to address before I leave you. In order for the – at least according to the Seventh Circuit, in a case that's been heavily cited by the Illinois Public Courts, the Harvard decision that we cited in our brief, the mend the hold doctrine only applies to defenses about which the insurance company had no knowledge prior to litigation. Recall here that Mr. McGarry walked out of his examination under oath and refused to complete it. There's some dispute as to whether or not he'd given up any information that he could have or not. That's really not before the court. But he did walk out, and he did not complete his examination under oath prior to litigation. Plaintiffs and the contemporaries wish the court to believe that somehow the pre-litigation investigation revealed all of the facts that we've identified in our brief. That is not the case. There's nothing in this record. The only thing in this record, and I will direct you to record C1434 and 1435, which is identified by the plaintiffs and the contemporaries as a summary of some of the investigative material that was obtained by farmers. They've argued that somehow the information at that location was sufficient to put farmers on notice concerning questions about Mr. McGarry's ownership of the Bedley. That's it. I would invite you to look at that. There's nothing in there that puts into question Mr. McGarry's ownership of the Bedley at that point. The only thing that it says is that Mr. Morgan says that he did not give the Mercedes to Mr. McGarry. That's really the only bit of information that's there. I'm not sure what defense that would justify at that point, at least on a clear and convincing basis. My point here is that there is nothing, absolutely nothing in the record before the Court that indicates that farmers had any information upon which they could assert a defense of any kind other than what they asserted in the denial letter, failure to cooperate and failure to complete the examination under oath. It was not until after litigation began, after Mr. McGarry refused to comply with policy conditions, that farmers began being able to develop information to support other defenses, including potentially a defense of fraud, insurance fraud. This is a case about concealment. That's what this case is all about. Mr. McGarry concealed the true facts when he presented his claim. He concealed the true facts at his examination under oath. He again concealed the true facts at his deposition when he continued to refuse to answer questions. Now he and Mr. Morgan wants this Court's approval to continue to conceal the truth, citing a doctrine that has no application to this case. This Court should reject the cynical attempt by Mr. McGarry and the contenders to pervert the purpose of discovery, the ascertainment of truth, and uphold Judge Bork's rulings in our respect. Thank you for your attention. Thank you. Counsel, briefly please. Thank you for your indulgence. First of all, this 9th and 11th grade dropouts are not criminal masterminds, and they're not here to bilk the billion-dollar insurance company. I don't feel sorry for farmers. Second of all, as far as farmers' cooperation is concerned, I made two separate requests for farmers to supplement the record so that we could get the entire SIU file before the Court here because they had, in fact, produced that. They refused to cooperate and I was unable to do that. But it's clear from the documentation and from the statements that they cited from the original record that Mr. Zielinski, the investigator for Farmers Insurance Company, was done. The investigation was closed in September of 2010. Now, I've been here for quite a while. I've made quite a few suggestions, but it's not my job to suggest to farmers how they can get their affirmative defenses before the Court. It's entirely up to them. But aren't you using this offensively? Yes. Okay. This is an equitable doctrine, and as such, the consequences of such are unstoppable. Now, it doesn't necessarily mean that they have to. The doctrine provides that first they have to try to amend it before you can sell them. What you're saying is they're trying to amend it, but they haven't tried to amend it. You're saying you're trying to force them to amend it. No. What I'm saying is that they should be stopped from taking it. But they haven't done it yet. Well, then they're stuck with the local corporation. Well, we'll see if they do it. I mean, why do we have to make that determination now? Was there any case? You couldn't find a case where somebody's using it offensively. Well, I believe that that's probably why you agreed to hear us earlier today because I'm pleased that at some point you thought that. We just wanted to see you. Oh, thank you. At some point you found there was something of interest to you. That's the whole point that we're here. And I think that that substantiates the fact that I made these arguments in good faith. Has there been motion practice to enforce production and discovery? I'm sorry? Has there been motion practice to enforce discovery? Yes, there has. Extensive, extensive motion practice. And Mr. Wiggins can better answer that because I wasn't involved in that area of the thing, in that area of the case. But I just wanted a couple of things, I think, if I had to say just one thing. Mr. McGarrett presented a bill of sale for development. Let's stick with the point, okay, because we do need to wrap it up. Okay. I appreciate that. So I don't think that there's anything that precludes an individual or a party or even a non-party joined by the plaintiff in this particular case from asserting an equitable doctrine to prevent farmers in this particular case from waiting until some time when they think it's fair or they think it's going to surprise us to present some sort of a new theory on the case. We'll start completely over. Let me ask one last question. Yes. Let's follow up on what Counsel said. If we decide that the sanctioned orders are void, then you agree we don't even reach the men-to-hold issue. Yes, there is case law. It's quite clear. So your answer is yes. The answer is yes. Thank you. The appeal is brought through a 4B5. Your answer is yes. My answer is yes. Good. Anything further? No, and if you have no more questions, I thank the Court for its indulgence and request that you grant the relief that was cited in our brief. On behalf of the Court, we thank all the lawyers for their excellent briefing of this interesting issue. We will take the matter under advisement, and as far as this case is concerned, we will stand in recess. We're going to take a short recess and allow the attorneys on the next case to get ready to go.